**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | I.D. No. 2011001029 |
| | ) | |
| TYRONE BROOKS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 23, 2022
Decided: June 21, 2022

**ORDER DENYING DEFENDANT'S MOTION
FOR POST-CONVICTION RELIEF**

Defendant Tyrone Brooks pleaded guilty to one count of Possession of a Firearm by a Person Prohibited ("PFBPP"). He now claims his lawyer ("Defense Counsel") forced him to do so. The Court finds that Brooks's guilty plea was knowingly and voluntarily entered. Accordingly, his Rule 61 motion is denied.

**BACKGROUND**

**A. The Arrest and Charges**

Wilmington police stopped Brooks on suspicion of a window tint violation. He was arrested after he told the officers that he had been evading a warrant. A car search followed and surfaced a gun from underneath the driver's seat.

Charged as a person prohibited, Brooks faced enhanced penalties. A PFBPP conviction would be his fourth felony conviction. And two of his prior convictions

were "violent" felony convictions.[1]  So Brooks not only was exposed to a mandatory 10-year sentence for PFBPP,[2] but also to a habitual offender term of 15-to-life.[3]

It appears that the State made an early 10-year plea offer to Brooks.  But the State rescinded its offer when Brooks filed a suppression motion.

## B.  The Suppression Motion

In an effort to link Brooks directly to the handgun under the driver's seat, the police obtained Brooks's DNA.  His DNA matched DNA found on the gun.  Brooks moved to suppress this evidence because, according to him, the police obtained neither his consent nor a warrant to obtain DNA for comparison.  As support for Brooks's position, the defense attached a "DNA search authorization form" to his suppression motion that did not contain his signature (the "Defendant's Form").[4] This is where things got interesting.

The State responded to the suppression motion by calling Brooks's version of the consent form a fake document.  The State (i) attached to its opposition brief a

---

[1] In addition to five misdemeanors, Brooks previously was convicted of felony drug possession, Assault First Degree (a lesser offense of the indicted charge of Attempted Murder First Degree), and PFBPP.  The Assault First and PFBPP convictions are classified by statute as violent felonies.  *See* 11 *Del. C.* § 4201(c) (2015).  The drug offense had been classified as a violent felony, but was removed from the statutory list before Brooks committed the instant PFBPP.  *See generally Butcher v. State*, 171 A.3d 537, 540 & n.12 (Del. 2017).

[2] *See* 11 *Del. C.* § 1448(e)(1)(c) (2021).

[3] *See id.* § 4214(a) (2018); *see also id.* § 4205(b)(3) (2003).

[4] *See* Ex. A to Def.'s Mot. to Suppress (hereinafter "Defendant's Form").

DNA search authorization form that *did* contain Brooks's signature (the "State's Form" and together with the Defendant's Form, the "DNA Forms");[5] (ii) averred that the State's Form was the DNA Form produced to Brooks in discovery; and (iii) observed cosmetic and linguistic irregularities in the Defendant's Form that, in the State's view, evinced an effort by the defense to alter the State's Form.[6]

## C. The Suppression Hearing

The DNA Forms comprised the first—and ultimately, the only—topic of Brooks's suppression hearing. Before the hearing began, Defense Counsel represented that the Defendant's Form was in Brooks's client file, but that he could

---

[5] *See* Ex. A to State's Opp'n to Def.'s Mot. to Suppress (hereinafter "State's Form"). The State also attached handwriting exemplars from other documents Brooks signed tending to show that Brooks's signature on the State's Form was not forged. *See* Exs. B–C to *id.*

[6] *See, e.g.*, *id.* ¶¶ 6 n.1, 13–15. For example, the Defendant's Form (i) misspells words or spells them using symbols, misplaced capitalization, or letters from different languages or alphabets; (ii) is spaced inconsistently; (iii) omits signature lines; and (iv) blurs or overlaps sentences. In many ways, the Defendant's Form resembles a poorly converted PDF-to-Word file.
*Compare* State's Form:

> I have been informed [] that I have the right to refuse the Police to search my person . . . . That I do not have to let the Police search my person . . . . I do hereby waive these rights and authorize [signature of officer] of the Wilmington Department of Police, to conduct a complete and thorough search . . . . This written permission is . . . to the above named officer . . . .

*with* Defendant's Form:

> I froå<s have I.Qn informed [] that I have the right to refuse:tlre Police to•search.my person . . . . Thati•dö liöt have to the Police search my person . . . . I do hereby waive these rights and authorize [omitted signature line] ofthe Wilmington Department of PoliCe, to conduct a complete and thorough search . . . . This written permission is . . . to the abpve named offcef . . . .

3

not determine where it originated.[7]  More important, Defense Counsel believed that the Defendant's Form did not harm or change Brooks's consent arguments.[8]

This made sense.  If the Defendant's Form were genuine, then Brooks may not have consented to a DNA search.  Stated conversely, if the State's Form was a forgery, then the police may have tried to paper over a constitutional violation.  Either way, resolving the consent to search dispute would have involved questions of witness credibility and the police's investigative and recordkeeping procedures.  Hence, the intended purpose of Brooks's suppression hearing.

It was clear that there would need to be a hearing on these irreconcilably different forms.  Before the hearing began, however, and despite Defense Counsel's contrary advice, Brooks insisted on addressing the Court directly.[9]  What ensued was an unprompted[10] and largely incoherent rant during which Brooks accused Defense Counsel of dooming his suppression case by submitting a fake document.  Even though the Court reminded Brooks that it had not made any ruling on the DNA Forms, Brooks all but conceded the authenticity of the State's Form and sought to withdraw his suppression motion:

> **THE COURT**:  If you didn't sign a consent form, then the [State's Form] is fraudulent, not [the Defendant's Form] . . . .

---

[7] *See* D.I. 30 at 5:4–23 ("Hr'g Tr.").
[8] *Id.* at 3–6.
[9] *Id.* at 2:13–17.
[10] No one asked about the validity of the DNA Forms before Brooks raised it and the Court did not wish to address it ahead of the hearing.  *See, e.g.*, *id.* at 7:18–19, 8:16.

**DEFENSE COUNSEL**: And that's what [Brooks] has told [me] . . . .

**BROOKS**: [I]f my lawyer put in [the Defendant's Form], normally he would be saying, well, whose is right, whose is wrong. But at the end of the day, [it] can't be a sworn officer of the law or a prosecutor from the State. I'm going to lose my hearing . . . . I don't want to go on with the hearing.[11]

Based on his own understanding of, and what he believed to be the likely outcome for, the DNA Forms, Brooks then declared that he wished to plead guilty:

**THE COURT**: If you signed [a] consent form, you very well may lose the hearing, because [then] I have a signed consent form from you. If you didn't sign [a] consent form – . . . .

**BROOKS**: I would just take a plea then. Because if you're saying I'm going to lose and I have no grounds and mine's invalid and theirs is valid, I would have just took the plea.

**THE COURT**: I didn't say theirs is valid. I don't know whose is valid . . . .

**BROOKS**: I'll just take the plea . . . .[12]

---

[11] *Id.* at 8:22–9:1, 9:12–16, 9:20–22, 10:1–5.

[12] Hr'g Tr. at 10:6–9, 10:11–16, 10:20.

Although the Court need not—and does not—make the following findings, the Court notes that Brooks's fatalistic attitude and defensive demeanor would seem to have a simple explanation: Brooks personally created (or commissioned someone to create) the Defendant's Form in an ill-considered effort to manufacture a suppression argument. Indeed, there is record evidence raising an inference that Brooks may have tried this tactic earlier in the case. Defense Counsel suggests that Brooks initially proffered a misleading tint waiver to invent a different suppression issue. *See* Aff. of Def. Couns. at 2 ("Pederson Aff.") (noting that, although he did not have a tint waiver when he was arrested, Brooks submitted to Defense Counsel a back-dated "tint waiver form" to support a challenge to the traffic stop).

After the State called his bluff, Brooks realized that his battle of the forms was likely to backfire. So he tried to get in front of the impact by shaping the authenticity narrative before anyone else did. *See supra* note 10. Brooks then used Defense Counsel as a scapegoat, lodging quasi-moral objections to the idea that Defense

5

Recall that Brooks's motion inspired the State to rescind its 10-year plea offer, so there was no offer pending at the time. The Court then took an extended recess to allow the parties some time to settle down and to give Brooks time to discuss his options with Defense Counsel. When the hearing reconvened, the parties announced that they reached a plea agreement.

## D. The Plea Colloquy

Brooks tendered a guilty plea to PFBPP. The plea contemplated the minimum mandatory sentence—10 years at Level V—and specified that the State would not file a habitual offender petition against Brooks.[13] In other words, the plea saved Brooks at least five years at Level V and from the possibility of life imprisonment. Brooks signed up for these terms and benefits.[14] But in light of the commotion that occurred earlier, the Court engaged Brooks in a lengthy colloquy to ensure that he fully understood the consequences of pleading guilty.[15]

---

Counsel submitted a false document on his behalf. *See* Hr'g Tr. at 18:12–15. All this is reminiscent of Gertrude's observation that, "[Thou] doth protest too much, methinks." William Shakespeare, *Hamlet* act 3, sc. 2, l. 254 (Barbara A. Mowat & Paul Westine eds., Simon & Schuster 1st ed. 1992) (1603).

Despite his pearl-clutching, however, Brooks never actually alleged that Defense Counsel *created* the Defendant's Form. Instead, Brooks maintained that the Defendant's Form "came from out of the sky," *id.* at 18:22–23, or "from the State[,]" *id.* at 11:6–7. There is no reason to think Defense Counsel submitted the Defendant's Form for any other reason than Brooks told him it was a real document.

[13] D.I. 26 (Plea Agreement).

[14] *See id.*; Hr'g Tr. at 13–14.

[15] *See* Hr'g Tr. at 13–17. *See generally* Del. Super. Ct. Crim. R. 11(c)–(d).

For example, the Court asked whether Brooks reviewed the plea agreement with Defense Counsel. Brooks said he did.[16] The Court explained to Brooks that his plea would preclude any further litigation over the DNA Forms. Brooks said he understood.[17] The Court also added that a guilty plea would waive the balance of his trial rights. Brooks said he understood that too.[18] As so advised, Brooks elected to admit to the Court that he was guilty of PFBPP.[19]

Brooks's colloquy responses were consistent with those he provided in his Truth-in-Sentencing Guilty Plea Form (the "TIS Form")—a document Brooks said he reviewed with Defense Counsel as well.[20] Brooks confirmed that he "read and understood all the information on" the TIS Form.[21] He also confirmed that he "freely and voluntarily decided to plead guilty[.]"[22] Similarly, he confirmed that he was not "threatened or forced" by anyone, including Defense Counsel, to plead guilty.[23]

Before accepting the plea, the Court last resolved an ambiguity in the TIS Form. The TIS Form asked Brooks a compound question: "Are you satisfied with your lawyer's representation of you, and that your lawyer has fully advised you of

---

[16] Hr'g Tr. at 15:9–12.
[17] *Id.* at 14:22–15:8.
[18] *Id.* at 15:13–16:2.
[19] *Id.* at 19:22–23.
[20] *Id.* at 15:10–12.
[21] D.I. 26 at Line 15 (TIS Form).
[22] *Id.* at Line 3.
[23] *Id.* at Line 5.

your rights?"[24]  In his TIS Form, Brooks answered "no."[25]  During his colloquy, however, Brooks reassured the Court that his "no" answer applied to the satisfaction portion of the question, not to the rights portion:

> **THE COURT**: I'm more concerned that you've been over your rights on the [TIS Form] than I am with whether you're happy with your lawyer's representation.  Do you understand your rights that are –
>
> **BROOKS**: I understand my rights.[26]

The Court accepted Brooks's plea and then immediately sentenced him to 15 years at Level V, suspended after 10 years for decreasing levels of supervision.[27]  Brooks's sentence was entered on December 9, 2021.  He did not appeal.

### E.  This Motion

On March 3, 2022, Brooks moved *pro se* under Rule 61 for post-conviction relief.[28]  Brooks's allegations are unclear, but seem to raise two ineffective assistance of counsel claims in addition to various claims based on the DNA search and the

---

[24] *Id.* at Line 13.

[25] *Id.*

[26] Hr'g Tr. at 17:11–16.  Brooks's "dissatisfaction" came from what he felt to be an untimely disclosure by Defense Counsel of the State's Form.  At some points, Brooks claimed he never saw the State's Form before the hearing. *See, e.g.*, 11:16, 18:21–23.  But at other times, Brooks admitted that he met with Defense Counsel to discuss the State's Form before the hearing. *See, e.g.*, 12:1–8, 17:23.

[27] D.I. 27 (Sentencing Or.).

[28] Brooks also moved *pro se* under Criminal Rule 35 for a sentence reduction.  The Court denied that motion because Brooks's sentence is a minimum mandatory sentence not subject to downward departure. *See* 11 *Del. C.* § 1448(e)(1)(c).

underlying traffic stop. To the extent Brooks alleges ineffective assistance, Defense

Counsel has filed an affidavit in which he denies the allegations.[29]

### 1. The Plea Claims

Brooks principally alleges that he "did not want to plead guilty," but Defense

Counsel "coerced" him into doing so anyway.[30] Brooks also alleges that Defense

Counsel was ineffective because Defense Counsel failed to provide Brooks with his

"full discovery" before the suppression hearing (collectively, the "Plea Claims").[31]

Contextualized, Brooks defines "full discovery" to mean the State's Form. Brooks

thus seems to suggest that he did not plead guilty knowingly.

Defense Counsel denies the Plea Claims. As to the coercion allegation,

Defense Counsel states that he advised Brooks on the possible outcomes for his

suppression motion and the advantages and disadvantages of pleading guilty.[32]

Notwithstanding the State's Form, Defense Counsel says he emphasized to Brooks

that the Court had not yet ruled on any authenticity issue.[33] Brooks, however,

essentially concluded that the State's Form, coupled with possibility of a habitual

sentence, made the risk of an adverse suppression ruling too great to decline the 10-

---

[29] *See generally* Pederson Aff.
[30] Def.'s R. 61 Mot. at 3 (Ground One).
[31] *Id.*
[32] Pederson Aff. at 1–2.
[33] *Id.*

9

year offer.[34]  In reaching that conclusion, Defense Counsel notes that Brooks "refused to answer" whether he in fact signed the State's Form.[35]

As to the discovery allegation, Defense Counsel states that he provided Brooks with all his discovery in the order Defense Counsel received it.[36]  Defense Counsel also states that he met with Brooks four days before the suppression hearing to discuss the State's Form.[37]  Defense Counsel adds that Brooks wanted to pursue the hearing despite the existence of the State's Form.[38]  It was not until "minutes before the hearing" started that Brooks changed his mind.[39]

### 2. The Suppression Claims

Separately, Brooks challenges the authenticity of the State's Form, the validity of his consent, and the basis for his traffic stop.[40]  The Court will refer to these allegations as the "Suppression Claims" because they were subjects, or potential subjects, of Brooks's withdrawn suppression motion.

---

[34] *Id.*
[35] *Id.* at 2.
[36] *Id.* at 1.
[37] *Id.*  Brooks confirmed this.  Hr'g Tr. at 17:23.
[38] Pederson Aff. at 1.
[39] *Id.*
[40] Def.'s R. 61 Mot. at 3 (Grounds Two, Three & Four).

## STANDARD OF REVIEW

A post-sentence attempt to invalidate a guilty plea is considered "a collateral attack against the conviction" and so "is subject to the strictures of Rule 61[.]"[41] Collateral review "ensure[s] that individuals are not imprisoned" wrongly.[42] But "the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea."[43] As a result, guilty pleas "are accorded a great measure of finality."[44] "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."[45]

Disturbing finality "impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside a guilty plea are approved . . . ."[46] In contrast, guilty plea enforcement "promotes the finality required in a system as heavily dependent on guilty pleas as ours."[47] "It is a matter of fundamental import

---

[41] *Patterson v. State*, 684 A.2d 1234, 1237 (Del. 1996).

[42] *Herrera v. Collins*, 506 U.S. 390, 400 (1993).

[43] *United States v. Timmreck*, 441 U.S. 780, 784 (1979) (internal quotation marks omitted). *E.g.*, *Schlup v. Delo*, 513 U.S. 298, 321 (1995) (describing innocence cases as "extremely rare"); *accord Purnell v. State*, 254 A.3d 1053, 1122–23 (Del. 2021).

[44] *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). *See Albury v. State*, 551 A.2d 53, 60 n.9 (Del. 1988) (noting that Delaware law's interest in "the finality of guilty pleas" is "fundamental" (internal quotation marks omitted)).

[45] *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks omitted).

[46] *Hill v. Lockhart*, 472 U.S. 52, 58 (1985) (internal quotation marks omitted).

[47] *United States v. Vonn*, 535 U.S. 55, 72 (2002).

that there be a definitive end to the litigable aspect of the criminal process."[48] Accordingly, the bases for *ex post* guilty plea challenges are "extremely narrow[.]"[49]

The narrowed grounds for post-sentence attacks on guilty pleas reflect doctrines presuming the validity of convictions. "Rule 61 is intended to correct errors in the trial process, not to allow defendants unlimited opportunities to relitigate their convictions."[50] To deter abusive collateral litigation, the standards and presumptions "adopted" under post-conviction rules purposefully have made "winning [collateral] relief difficult[.]"[51] For example, a defendant who seeks to invalidate a conviction must contend with a "presumption of regularity."[52] "The presumption of regularity attaches to all final judgments . . . and implies those judgments have been done rightly until contrary evidence appears."[53] Contrary evidence will not be credited if it is based on unsupported or contradicted allegations:

> On collateral attack, a silent record supports the judgment; the state receives the presumption of regularity and all reasonable inferences . . . . [G]aps and ambiguities in the record [do not] count against the state. Judgments are presumed valid . . . and one who seeks collateral relief bears a heavy burden.[54]

---

[48] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).
[49] *Jackson v. State*, 654 A.2d 829, 832 n.2 (Del. 1995).
[50] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[51] *Brown v. Davenport*, 142 S. Ct. 1510, 1526 (2022).
[52] *E.g.*, *Parke v. Raley*, 506 U.S. 20, 29 (1992); *accord Xenidis v. State*, 2020 WL 1274624, at *2 (Del. Mar. 17, 2020).
[53] *Xenidis*, 2020 WL 1274624, at *2.
[54] *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) (citations omitted). *Accord Meyers v. Gillis*, 93 F.3d 1147, 1151 (3d Cir. 1996).

Accordingly, Rule 61 shifts to the defendant the burden of demonstrating that his plea lacks a "sufficient factual and legal basis" that otherwise will be presumed.[55]

## ANALYSIS

A Rule 61 analysis proceeds in two steps. First, the Court must determine whether the motion is procedurally barred.[56] If it is not barred, the Court next reviews the motion's merits on a claim-by-claim basis.[57] As explained below, part of Brooks's motion is procedurally barred and the rest of it fails on the merits.

### A. Part of Brooks's motion is procedurally barred.

Rule 61 is nothing "other than a procedural device[.]"[58] As a result, there are "several" procedural "limitations on the availability of postconviction relief."[59] Rule 61 contains four procedural bars that, if applicable, preclude review of all or part of the defendant's motion.[60] Rule 61 bars claims that are untimely,[61] successive,[62] defaulted,[63] or formerly adjudicated.[64]

---

[55] Del. Super. Ct. Crim. R. 61(a)(1). *See, e.g.*, *Dorsey v. State*, 2007 WL 4965637, at *1–2 (Del. Nov. 6, 2007).
[56] *E.g.*, *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[57] *E.g.*, *State v. Reyes*, 155 A.3d 331, 342 n.15 (Del. 2017).
[58] *Bailey v. State*, 588 A.2d 1121, 1125 (Del. 1991).
[59] *Ploof*, 75 A.3d at 820.
[60] *See generally* Del. Super. Ct. Crim. R. 61(i)(1)–(4).
[61] *Id.* R. 61(i)(1).
[62] *Id.* R. 61(i)(2).
[63] *Id.* R. 61(i)(3).
[64] *Id.* R. 61(i)(4).

13

The Plea Claims are not procedurally barred. These Claims are timely, are not successive, and were not previously adjudicated. They also are not defaulted because they allege ineffective assistance of counsel, which "generally cannot be raised at trial or on direct appeal."[65]

The Suppression Claims, however, are barred as defaulted. This conclusion follows from the Court's discussion of the Plea Claims. So the Court will defer its procedural analysis of the Suppression Claims for now.[66]

## B. The Plea Claims fail to state a claim for post-conviction relief.

Brooks does not maintain his innocence. He seeks instead to invalidate his guilty plea. But Brooks's plea must be enforced if his plea was knowingly and voluntarily entered. It was. Brooks was required to show otherwise. He did not.

### 1. Brooks bears the burden of demonstrating that his plea is invalid.

To state a plea-based ineffective assistance claim, the defendant must demonstrate prejudice:[67] "a reasonable probability that, but for counsel's errors, he would not have pled guilty, but would have insisted on going to trial."[68]  "A

---

[65] *Malloy v. State*, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011). *See, e.g., Green v. State*, 238 A.3d 160, 175 (Del. 2020) (stating general rule and principles).
[66] *See infra* Analysis § C.
[67] *See generally Strickland v. Washington*, 446 U.S. 668, 687 (1984). Because the Plea Claims fail for lack of prejudice, the Court need not determine whether Defense Counsel performed deficiently. *See, e.g., Ruffin v. State*, 2019 WL 719038, at *2 (Del. Feb. 19, 2019).
[68] *Grosvenor v. State*, 849 A.2d 33, 35 (Del. 2004).

14

reasonable probability means a probability sufficient to undermine confidence in the outcome . . . ."[69] "The likelihood of a different result must be substantial[,] not just conceivable."[70] Bare allegations of prejudice will not suffice.[71] Nor will allegations that do not "pertain[] to the validity of the plea[.]"[72] Instead, the defendant "must make concrete allegations of actual prejudice and substantiate them[.]"[73]

Pleading guilty is one of the defendant's "autonomy interests."[74] Because its "consequences . . . are the defendant's alone," the decision to plead guilty is "too important to be made by anyone else."[75] Autonomous choices, however, "may sometimes make the defendant worse off than if defense counsel had the final say[.]"[76] Even so, a defendant "cannot shift responsibility to his trial counsel for decisions in which he played a major role."[77] The Court "cannot disregard" the defendant's choices because his choices may, in turn, "substantially influence counsel's choices."[78] What the defendant commands, he must also obey.

---

[69] *Green*, 238 A.3d at 174 (internal quotation marks omitted).
[70] *Swan v. State*, 248 A.3d 839, 859 (Del. 2021) (internal quotation marks omitted).
[71] *See, e.g.*, *Purnell v. State*, 106 A.3d 337, 342 (Del. 2014).
[72] *MacDonald v. State*, 778 A.2d 1064, 1074 (Del. 2001) (internal quotation marks omitted).
[73] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).
[74] *Reed v. State*, 258 A.3d 807, 822 (Del. 2021) (internal quotation marks omitted).
[75] *Cooke v. State*, 977 A.2d 803, 842 (Del. 2009). *Accord Taylor v. State*, 213 A.3d 560, 568 (Del. 2019); *see Jones v. Barnes*, 463 U.S. 745, 751 (1983).
[76] *Taylor v. State*, 28 A.3d 399, 406 (Del. 2011).
[77] *Cabrera v. State*, 173 A.3d 1012, 1021 (Del. 2017).
[78] *Shockley v. State*, 565 A.2d 1373, 1376 (Del. 1989).

A guilty plea will be enforced if it was knowingly and voluntarily entered.[79] The defendant bears the burden of establishing that "his plea was made either involuntarily or under misapprehension or mistake as to his legal rights."[80] In shouldering that burden, two "formidable barrier[s]" stand in the defendant's path.[81] First, the defendant will be bound by his plea colloquy statements, which are "presumed to be truthful."[82] And second, "[i]n the absence of clear and convincing evidence to the contrary," the defendant will be bound by his answers in his Truth-in-Sentencing forms.[83] In all this, there is a "near-presumption" of validity that operates "against granting" a post-sentence motion attacking a guilty plea.[84] "[I]n acting as an incentive to think through a guilty plea before sentence is imposed," a near-presumption of validity "tends to separate meritorious second thoughts" from "sour grapes over a sentence once pronounced."[85]

With these principles in mind, the Court turns to the Plea Claims.

---

[79] *See, e.g.*, *Brown v. State*, 250 A.2d 503, 505 (Del. 1969).

[80] *Raison v. State*, 469 A.2d 424, 425 (Del. 1983).

[81] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997) (internal quotation marks omitted).

[82] *Id.*

[83] *Scarborough v. State*, 938 A.2d 644, 651 (Del. 2007) (internal quotation marks omitted).

[84] *Vonn*, 535 U.S. at 72 (internal quotation marks omitted).

[85] *Id.* *See also State v. Owens*, 2021 WL 6058520, at *10 (Del. Super. Ct. Dec. 21, 2021) ("Calibrated to screen for the wrongfully convicted, Rule 61 should not be used to launch *post hoc* strikes on issues inessential to a judgment of guilt.").

### 2. Brooks's plea was knowing and voluntary.

#### a. Defense Counsel did not "coerce" Brooks into pleading guilty.

Brooks principally claims that Defense Counsel was ineffective because he "coerced" him into pleading guilty, which Brooks now says he "did not want" to do. The Court, however, will not "upset a plea solely because of *post hoc* assertions from a defendant" of his "expressed preferences[,]" but will "look to contemporaneous evidence" instead.[86] Contemporaneous evidence from Brooks's plea colloquy and TIS Form undermines his belated assertion that he did not want to plead guilty.

To begin, Brooks's colloquy shows that he knowingly and voluntarily pleaded guilty. Brooks said he (i) reviewed the plea agreement with Defense Counsel; (ii) understood all his trial rights; (iii) knew he would waive his trial rights by pleading guilty; (iv) knew he was pleading guilty to PFBPP; (v) knew he would receive a 10-year prison sentence; (vi) knew he could have gone to trial instead of pleading guilty; and (vii) knew his plea would forsake all his pre-plea challenges (*e.g.*, to the DNA issue). Brooks does not offer a reason to think any of these statements are untrue.

Brooks's TIS Form reinforces his colloquy. There, Brooks affirmed that he (i) reviewed the TIS Form with Defense Counsel; (ii) understood all its questions; (iii) understood all his rights; (iv) decided freely and voluntarily to plead guilty; and

---

[86] *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

(v) was not threatened or forced by anyone, including Defense Counsel, to plead guilty. Pitched against his TIS Form, Brooks's "coercion" allegation rings hollow.

Brooks's colloquy and TIS Form control in the absence of clear and convincing evidence to the contrary. On this record, Brooks's conclusory allegation that he "did not want to plead guilty" is neither clear nor convincing.

Defense Counsel intended to pursue the suppression hearing, advised Brooks that his motion was viable, and emphasized that the Court had not ruled on the authenticity of the DNA Forms. Brooks saw things differently. He criticized Defense Counsel for submitting the Defendant's Form, found the motion too risky, and dropped the hearing in favor of reinitiating plea negotiations. There is nothing in the record suggesting that Defense Counsel ever forced Brooks to do anything.

Brooks, in his autonomy, was entitled to prefer a plea over his suppression motion. For one reason or another, he may have now come to regret that decision. But he cannot now shift to Defense Counsel any miscalculation of litigation risks involved in his suppression motion when those risks were not Defense Counsel's risks in the first place.[87]  To the extent Brooks suffered any "prejudice" from pleading guilty, he brought it on himself. Defense Counsel was not ineffective.

To be sure, Brooks confronted a Hobson's choice: plead guilty to a 10-year prison sentence or chance a prison sentence of anywhere from 15 years to life. Seen

---

[87] *See Cabrera*, 173 A.3d at 1021; *Shockley*, 565 A.2d at 1376.

this way, Brooks probably did feel "coerced" into pleading guilty. But that "coercion" was not created or exerted by Defense Counsel and so is not the kind of improper pressure Rule 61 remedies. Brooks's dilemma was a product of statutory law, minimum mandatory sentencing, Fourth Amendment precedent, the State's absolute prosecutorial discretion, and perhaps most importantly, Brooks's own criminal history and behavior.[88]

Defense Counsel helped release Brooks from the traps Brooks set for himself. Brooks ignored a favorable plea offer only to base a suppression motion on a document of questionable legitimacy. He did withdraw the motion and disavow the Defendant's Form, but his hearing conduct made him a weak candidate for the State's sympathies. Yet, Defense Counsel still managed to persuade the State to reoffer the 10-year deal Brooks's suppression motion took off the table. That effort rescued Brooks from the possibility of a lifelong prison sentence. Although a decade in jail is not ideal, Brooks's "decision to plead guilty as a means to avoid additional prison time does not amount to 'coercion.'"[89] The "coercion" allegation fails.

---

[88] *Cf. Dolby v. State*, 2012 WL 686027, at *1 (Del. Mar. 2, 2012) (defining plea coercion as "threat[s] to take action that are not legally authorized").
[89] *Edwards v. State*, 2007 WL 4374237, at *1 (Del. Dec. 17, 2008).

### b. Defense Counsel did not withhold Brooks's "full discovery."

Brooks alternatively alleges that his plea is invalid because Trial Counsel ineffectively withheld his "full discovery"—*i.e.*, the State's Form—until the suppression hearing—*i.e.*, the day he pleaded guilty. This allegation fares no better.

For one thing, Brooks's complaint is refuted by the record. As noted above, Brooks eventually admitted that he discussed the State's Form with Defense Counsel four days before the hearing.[90] The Court need not accept contradicted post-conviction allegations.[91]

For another, Brooks does not allege that he would not have pleaded guilty if he had learned of the State's Form "earlier" than four days before the hearing. To the contrary, Brooks insisted that he would have *pleaded faster* if he knew about the

---

[90] *Compare, e.g.*, Hr'g Tr. at 11:16, 12:14, 18:10–11 (Brooks claims he had "never seen" the State's Form until the hearing), *with id.* at 17:23 (Brooks states that he learned of the State's Form "four days ago"), *and id.* at 12:7–8 (Brooks equivocates that a physical version the State's Form was not "sent" to him, but that he reviewed an electronic "copy" during his pre-suppression meeting with Defense Counsel).

[91] *See, e.g.*, *Blackledge*, 431 U.S. at 74 (On collateral attack, a "presentation of conclusory allegations unsupported by specifics is subject to . . . dismissal[.]"); *State v. Melendez*, 2003 WL 23095688, at *8 (Del. Super. Ct. Dec. 19, 2003) ("Melendez's claims might warrant [relief] if [the record] did not wholly contradict . . . his Rule 61 motion."), *aff'd*, 2004 WL 1965650 (Del. Aug. 25, 2004); *State v. Guess*, 2014 WL 3510017, at *3 (Del. Super. Ct. July 15, 2014) (same); *State v. Jones*, 2008 WL 4173816, at *23 (Del. Super. Ct. Sept. 3, 2008) (same); *see also Owens*, 2021 WL 6058520, at *14–15 & n.134 (collecting additional authority in denying Rule 61 evidentiary hearing that would have been based on contradicted allegations).

State's Form earlier.[92]   No harm, no foul: Brooks ultimately received the 10-year offer that was proposed pre-suppression.  Based on Brooks's own representations, then, any delay did not affect, let alone prejudice, his decision to plead guilty.  The "discovery" allegation fails.

In sum, Trial Counsel was not ineffective.  Accordingly, the Plea Claims fail.

## C.  The Suppression Claims are waived and barred.

Finally, the Court considers the Suppression Claims.  These Claims do not allege ineffective assistance.  They simply seek to revive Brooks's suppression motion.  But Brooks waived his suppression challenges by aborting his hearing and then knowingly and voluntarily pleading guilty.[93]  By consequence, the Suppression Claims are now subject to procedural default under Rule 61.[94]

Rule 61 bars claims that could have been raised during a defendant's direct proceedings, but were not.[95]   Here, Brooks could have pursued the Suppression Claims instead of pleading guilty.  The Court explained this to him.[96]  But he pleaded guilty anyway.  That choice was binding then and it remains binding now.

---

[92] *E.g.*, Hr'g Tr. at 10:14, 11:18–21 (Brooks says that, had he known about the State's Form earlier, he "would have just took the plea" instead of moving to suppress).
[93] *E.g.*, *Smith v. State*, 2004 WL 120530, at *1 (Del. Jan. 15, 2004); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003).
[94] *See Blackwell v. State*, 736 A.2d 971, 973 (Del. 1999).
[95] Del. Super. Ct. Crim. R. 61(i)(3).
[96] Hr'g Tr. at 14:22–15:7.

Moreover, to the extent Brooks implies that the Suppression Claims negate the voluntariness of his plea, Brooks could have said so on direct appeal.[97] He did not. In fact, he did not appeal at all. Rule 61, however, "is not designed as a substitute for direct appeal."[98] So the Court will not treat it that way.

The Suppression Claims are barred unless an exception applies. None does. Under Rule 61(i)(3), a procedural default may be excused if the defendant shows "cause" for the default and "prejudice" resulting from the cause.[99] Brooks alleges neither. True, ineffective assistance of counsel can establish cause for a procedural default.[100] But the Suppression Claims do not allege ineffective assistance. Even if they did, "[a]ttorney error [that] falls short of ineffective assistance of counsel does not constitute cause for relief from a procedural default."[101] As explained already, Defense Counsel was not ineffective. Accordingly, the Suppression Claims are barred without exception.

---

[97] *See, e.g.*, *Kalil v. State*, 2014 WL 2568029, at *3 (Del. June 5, 2014).
[98] *Flamer*, 585 A.2d at 745.
[99] Del. Super. Ct. Crim. R. 61(i)(3)(A)–(B). *See generally Wainwright v. Sykes*, 433 U.S. 72, 88–89 (1977). There also are exceptions for innocence and retroactive rules. *See* Del. Super. Ct. Crim. R. 61(d)(2), (i)(5). Brooks does not invoke them.
[100] *See, e.g.*, *Martinez v. Ryan*, 566 U.S. 1, 11–13 (2012).
[101] *Shelton v. State*, 744 A.2d 465, 475 (Del. 2000). *See also Somerville*, 684 A.2d at 1237 (finding that Rule 61(i)(3)(A)'s cause standard is higher than the cause standard governing a pre-sentence Rule 32(d) motion to withdraw a plea).

## CONCLUSION

Brooks knowingly and voluntarily pleaded guilty. That decision waived and defaulted his remaining challenges. Accordingly, his Rule 61 motion is **DENIED**.

**IT IS SO ORDERED**.

Charles E. Butler, Resident Judge